THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LOWELL MADISON, Defendant-Appellee.

Third District   No. 3—86—0015

Opinion filed November 18, 1986.

HEIPLE, J., dissenting.

Tony L. Brasel, State's Attorney, of Watseka, for the People.

Ronald Boyer, of Watseka, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Lowell Madison, was charged with 26 counts of possessing certificates of title with incomplete assignment. (Ill. Rev. Stat. 1985, ch. 95½, par. 4—104(a)(2).) The defendant moved to suppress the evidence on the grounds that it was obtained through an illegal search and seizure. The defendant's motion was granted and the charges were dismissed. The State appeals, contending that the trial court erred in granting the defendant's motion. We affirm.

The defendant was the owner-operator of a motor-vehicle salvage

yard named Madison Salvage Yard. The Iroquois County State's Attorney's office had received numerous complaints from neighbors living near the yard, apparently concerning the general condition of the premises. The State's Attorney relayed the complaints to the Secretary of State's office.

Around 1 p.m. on May 7, 1984, two Secretary of State police officers went to the defendant's salvage yard. At the trial, Jim Thompson, one of the officers, testified that the officers advised the defendant that they were to inspect his premises and records pursuant to a complaint. Officer Thompson testified that the officers did not possess a search warrant.

Officer Thompson further testified that following an inspection of the vehicles stored in the yard, the officers asked to see the defendant's business records. The officers subsequently found 26 vehicle certificates of title with incomplete assignments of title. Officer Thompson stated that the officers took possession of the 26 certificates, giving the defendant a receipt for them. Officer Thompson admitted that while the defendant cooperated with the officers and did not object to the search, the defendant never gave the officers permission to take the certificates.

On May 17, 1984, the defendant was charged with 26 counts of possession of certificates of title with incomplete assignment. On December 9, 1984, the defendant filed a pretrial motion to suppress the certificates because they were taken in violation of the fourth amendment prohibition against warrantless searches. The trial court granted the motion and summarily dismissed the charges. The State brings this appeal.

On appeal, the State contends that the trial court erred in allowing the defendant's motion because the search and seizure of the certificates of title were not unreasonable. The State musters a number of arguments in defense of its contention.

■ First, the State argues that the search and seizure were permitted under section 5—403 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1985, ch. 95½, par. 5—403.) The State argues that section 5—403 provides authority for a valid warrantless search in the form of a records check.

Section 5—403 allows the Secretary of State to conduct, under certain restrictions, periodic warrantless inspections of an automobile dealer's premises and records. The relevant part of section 5—403 of the Vehicle Code provides:

"(1) Authorized representatives of the Secretary of State including officers of the Secretary of State's Department of Po-

lice, other peace officers, and such other individuals as the Secretary may designate from time to time shall make inspections of individuals and facilities licensed or required to be licensed under Chapter 5 of the Illinois Vehicle Code for the purpose of reviewing records required to be maintained under Chapter 5 for accuracy and completeness and reviewing and examining the premises of the licensee's established place of business for the purpose of determining the accuracy of the required records. Premises that may be inspected in order to determine the accuracy of the books and records required to be kept includes all premises used by the licensee to store vehicles and parts that are reflected by the required books and records.

\* \* \*

(4) Inspection conducted pursuant to Chapter 5 may be initiated at any time that business is being conducted or work is being performed, whether or not open to the public or when the licensee or a representative of the licensee, other than a mere custodian or watchman, is present. The fact that a licensee or representative of the licensee leaves the licensed premises after an inspection has been initiated shall not require the termination of the inspection.

(5) Any inspection conducted pursuant to Chapter 5 shall not continue for more than 24 hours after initiation.

(6) In the event information comes to the attention of the individuals conducting an inspection that may give rise to the necessity of obtaining a search warrant, and in the event steps are initiated for the procurement of a search warrant, the individuals conducting such inspection may take all necessary steps to secure the premises under inspection until the warrant application is acted upon by a judicial officer.

(7) No more than 6 inspections of a premises may be conducted pursuant to Chapter 5 within any 6 month period except pursuant to a search warrant. Notwithstanding this limitation, nothing in this subparagraph shall be construed to limit the authority of law enforcement agents to respond to public complaints of violations of the Code. For the purpose of this subparagraph, a public complaint is one in which the complainant identifies himself or herself and sets forth, in writing, the specific basis for their complaint against the licensee.

(8) Nothing in this Section shall be construed to limit the authority of individuals by the Secretary pursuant to this Section to conduct searches of licensees pursuant to a duly issued and

authorized search warrant." Ill. Rev. Stat. 1985, ch. 95½, par. 5—403.

In *People v. Potter* (1986), 140 Ill. App. 3d 693, 489 N.E.2d 334, this court discussed section 5—403. We held, pursuant to subsections (5), (6) and (8) of section 5—403, that "if within 24 hours information is uncovered which might give an officer probable cause to believe an offense has been committed, a search warrant should be obtained before any further searching or seizing is attempted." 140 Ill. App. 3d 693, 697-98, 489 N.E.2d 334, 337.

In the case at bar, we agree with the State that under section 5—403 the Secretary of State possessed the authority to inspect the defendant's premises and business records. A review of the record reveals that the officers conducted their inspection in compliance with section 5—403. However, under *Potter* we find that when the officers discovered the certificates with incomplete assignments, they should have obtained a search warrant before attempting to seize them. This they failed to do, thereby rendering the seizure of the certificates unlawful.

■■ ■ The State also contends that the search and seizure were not unreasonable considering the minimal intrusion, the cooperative conduct of the defendant, and the lesser justifiable expectation of privacy for scrap processors. We disagree.

First, the intrusion was more than minimal because, as stated earlier, while the investigation of the defendant's yard was properly conducted within section 5—403, the seizure of the certificates was not lawful. Second, while the defendant cooperated with the officers during the investigation, he never gave his permission to either conduct the investigation or seize the certificates. It is well settled that mere acquiescence to authority of police does not constitute consent. (*Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788.) Third, while the defendant, as a scrap processor, may have had a lesser justifiable expectation of privacy than a person in a private dwelling in a criminal search, this was an administrative investigation where the procedures to conduct the investigation and any possible seizure of evidence are specifically governed by statute.

■ The State argues that in addition to section 5—403, the Secretary of State is authorized under section 2—111 of the Vehicle Code to take possession of unlawfully issued certificates of title. Specifically, the State argues that the certificates of title in question were unlawfully issued to the defendant because the titles lacked complete assignment.

Section 2—111 provides as follows:

"Seizure of documents and plates. The Secretary of State is authorized to take possession of any certificate of title, registration card, permit, license, registration plate, plates, or registration sticker issued by him upon expiration, revocation, cancellation or suspension thereof, or which is fictitious, or which has been unlawfully or erroneously issued. Police officers who have reasonable grounds to believe that any item or items listed in this section should be seized shall request the Secretary of State to take possession of such item or items." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—111.)

We disagree with the State's interpretation of section 2—111. We read the section to permit the Secretary of State to take possession of certificates unlawfully issued by the Secretary of State but not to support the instant seizure. Here, this section did not give the officers authority to seize certificates of title that were in fact lawfully issued by the Secretary of State.

The State argues additionally that in any event a warrant was not necessary because there were exigent circumstances. The State contends that had the officers left the certificates with the defendant, he could have filled in the blank assignment sections. The State also points out that the inspection began in the afternoon. The State claims that at the time by which the inspection was to be completed, it would have been too late to obtain a search warrant. An officer would have been required to stay overnight to secure the premises. Therefore, the State concludes, there were exigent circumstances such that a warrantless seizure was constitutionally permissible.

■ ■ The validity of a warrantless search and seizure must be determined on the basis of whether the State has shown that the exigencies of the situation made that course of conduct imperative. (*People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293.) The State has failed to prove that the situation was imperative to justify a warrantless seizure. Other than the assertion by the State in its brief, there is nothing before us to indicate that the officers had insufficient time to return to get a search warrant before the courthouse closed. We find that exigent circumstances did not exist to permit the warrantless seizure of the certificates.

■ The State's next argument, that the certificates were taken in the plain view of the officers, is without merit. As an exception to the prohibition against warrantless searches, the plain-view doctrine requires, *inter alia*, that the evidence come inadvertently into the officer's view. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733.) In the instant case, it can hardly be said that the certifi-

cates came inadvertently into the officer's view. The purpose of the search was to inspect the defendant's business records, including any certificates of title in his possession.

■ Finally, the State argues that the good-faith exception to the exclusionary rule should apply. This exception applies only to good-faith violations of the fourth amendment resulting from searches conducted pursuant to technically invalid warrants. (*United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.) Here, the exception is inapplicable because the search was conducted without a search warrant, nor was such a warrant ever issued.

Based on the foregoing, we find that the trial court properly excluded the certificates of title from evidence on the grounds that they were obtained through an invalid, warrantless seizure.

Accordingly, the judgment of the circuit court of Iroquois County is affirmed.

Affirmed.

SCOTT, P.J., concurs.

JUSTICE HEIPLE, dissenting:

The majority's reliance on *People v. Potter* (1986), 140 Ill. App. 3d 693, is misplaced. In the instant case, the Secretary of State police conducted a routine regulatory inspection of the defendant's premises and business records. The search was conducted in compliance with section 5—403 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 5—403) since it was performed for the purpose of reviewing records for accuracy and completeness, was initiated during regular business hours, and continued for less than 24 hours as mandated by the statute. While conducting the inspection, the officers discovered 26 certificates of title with incomplete assignments, which they seized after giving the defendant receipts. The officers then left the defendant's premises.

A search warrant here would have been totally superfluous. The officers merely seized certificates they discovered during the course of their administrative search. They intended to do no further searching as their inspection had already been completed.

The facts in *Potter* are vastly different. In *Potter*, the Secretary of State police suspected the defendants had engaged in illegal activities. Since they were unable to obtain a search warrant, they conducted a "fishing expedition" under the guise of a section 5—403 administrative search which continued for five days, long after criminal

activity was discovered. On those facts, we held that "if within 24 hours information is uncovered which might give an officer probable cause to believe an offense had been committed, a search warrant should be obtained before any further searching or seizing is attempted." *People v. Potter* (1986), 140 Ill. 3d 693, 697-98, 489 N.E.2d 334, 337.

A search warrant in cases involving facts similar to those in *Potter* serves to ensure that the fourth amendment's prohibition against unreasonable searches and seizures is not violated. A search warrant in circumstances such as those presented in the instant case serves no useful purpose and will only thwart the attempts of officers seeking to guarantee compliance with the Illinois Vehicle Code. The defendant's rights were not violated by this search and seizure.

Therefore, I dissent from the holding of the majority and would reverse the trial court.